JUDGE COFER
delivered the opinion oe the court.
It appears from tbe pleadings in this case, that April 9, 1868, the Kentucky Masonic Mutual Life Insurance Company issued to Isaac N. Miller a certificate of membership, in said company; that said Miller died intestate, leaving a widow, but no child or children, surviving him; that the widow has been judicially found to be of unsound mind; that the appellant B. G. Thomas is her committee; that the appellee is administrator of the goods, chattels, and credits of Miller; and that there is due from the said Masonic Mutual Life Insurance Company on said certificate the sum of $2,696, which is claimed *492 by both the administrator and widow, and which the company is willing and ready to pay to whomsoever shall be adjudged entitled to it.
The certificate obligates the company upon certain considerations and conditions, all of which have been performed, to pay to Isaac N. Miller’s “heirs, or as he may direct in his will, the sum of $1 for each and every member belonging to said company at his death,” unless the number should exceed five thousand, in which event no more than $5,000 are to be paid.
The company was organized under the act of the general assembly entitled “ An act to incorporate the Kentucky Masonic Mutual Life Insurance Company,” approved December 18, 1867. (Acts 1867-8, vol. 1, p. 131.) Its charter was amended by an act approved March 21,1871. (Acts 1871, vol. 2, p. 340.)
The first section of the original act, after naming the corporators, creates the parties named a body corporate, with power “to have perpetual succession, with the right to obtain, hold, sell, and convey and dispose of every class of property, and to make and retain their capital stock to the amount of $50,000, with the power to confer charities as herein provided, or as the company may determine, and to malee contracts that shall be binding, and transact all business in its corporate name for its corporate purposes,” etc.
The second section authorizes the corporators, or a majority of them, to organize and to receive as members only sound and healthy master masons of Kentucky under sixty years of age, and in good standing in their respective lodges.
The third section provides, that “ each person upon becoming a member shall pay into the treasury of the company $6 (and by section 1 of the amendment, from $6 to $20, according to the age of the person), to become a permanent fund of the company, which, with the other qualifications prescribed, shall entitle him to membership for life, or during good behavior,” etc.
*493 The 10th, 11th, and 12th sections provide as follows:
“ 10. In addition to the permanent fund, upon notification of the death of a member, each surviving member shall pay into the treasury $1.10; $1 of which from each member to constitute a fund to be paid for the benefit of the widow and children of the deceased member-, and the balance to defray the expenses of the company.
“ 11. The fund created in section 10, for the benefit of the widow and children of the deceased member, shall be paid to them by said company as soon as it can be collected, or to their trustee, in the discretion of the company, subject, however, to be appropriated for their benefit, equally, according to will of deceased member, or if he should leave no widow or child, then to be appropriated according to his will; or if he makes no will, and leaves no widow or child, it shall vest and remain in the company and be added to its capital stock, or be appropriated as they may deem expedient.
“12. No part of the stock or interest which any member, or his widow and children, may have in said institution shall be subject to any debt, liability, or legal or equitable process ¿gainst him or any of them.”
Counsel for the administrator concede that if the language of sections 10, 11, and 12 of the charter had been pursued in the certificate of membership, the widow would have been entitled to the fund in contest. But they contend that the company had power, under the fii-st section of its charter, to make contracts; and having contracted to pay to Miller’s heirs, the administrator is entitled to recover the money due on the certificate of membership.
We need not stop to inquii-e what may be the extent of the power of the company to make contracts, nor whether a covenant with the ancestor to pay to the heir after his death xvill pass to the personal representative of the ancestor, or to the heir for whose benefit the covenant was made, because we are *494 of the opinion that whatever might be the answers to those inquiries, they could have no influence on the decision of this case.
, The charter prescribes who may become members of the company, and their obligations, and who shall be the beneficiaries of the membership after the death of the member, and it is not in the power of the company or of the member, or of both, to alter the rights of those who by the charter are declared to be the .beneficiaries, except in the mode and to the extent therein indicated.
The company and Miller could decide the question whether he should become a member, and having- done so, from that moment the rights of the beneficiaries attached, subject to be defeated by his failure to comply with the terms of his membership, but subject to no other contingency whatever.
If therefore the stipulation to pay to Miller’s -heirs should be construed to have been intended to secure the fund payable on account of his membership to his administrator or his creditors, such stipulation could not prevail over the unequivocal provisions of the charter, that it shall be paid to his widow and children; and that it was the intention of the legislature that the fund due on account of membership should not be diverted from the destination indicated by sections 10 and 11, is made certain by sections 12 and 17.
Section 12 declares that no part of the'stock or interest of any member, or of his widow or children, shall be subject to any debt against him or them; and section 17 declares that the object of the company is merely to provide for the widows and orphans of master masons.
We are therefore of the opinion, that the court erred in adjudging the money in contest to Miller’s administrator, and the judgment is reversed, and the cause is remanded with directions to dismiss the administrator’s petition, and to adjudge the fund to Mrs. Miller’s committee.